## UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF COLORADO

Case No. 1:23-cv-137

**ERIC POSEY,**

Plaintiff,

v.

**SCHOOL DISTRICT NO. 1 IN THE COUNTY OF DENVER AND STATE OF COLORADO,**

Defendant.

---

### COMPLAINT AND JURY DEMAND

---

The Plaintiff, Eric Posey, by and through his attorney, Sharyn E. Dreyer of the Colorado Education Association, hereby complains against the Defendant as follows:

### NATURE OF THE ACTION

For approximately fifteen years, Plaintiff Eric Posey worked as a dedicated Army Instructor ("AI") in the Defendant's ("School District's" or "DPS'") Junior Reserve Officer Training Corps ("JROTC") program at Manual High School. Beginning in the 2018-19 school year and continuing through his eventual separation from the School District in 2022, DPS subjected Posey to a pattern of discrimination, harassment, and retaliation. Posey opposed the unlawful treatment he suffered by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), as well as by lodging two grievances through the procedure set forth in a collective bargaining agreement ("CBA") between DPS and the Denver Classroom

Teachers Association ("DCTA").  With this action, Posey seeks to remedy the unlawful discrimination, harassment, and retaliation he suffered in violation of Title VII of the Civil Rights Act of 1964, as well as to enforce the CBA's prohibition against retaliation against those who utilize the grievance process to cure contract violations by School District management.

## JURISDICTION AND VENUE

1. The United States District Court for the District of Colorado has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## ADMINISTRATIVE AND GRIEVANCE PROCESSES

3. Posey filed Charge of Discrimination No. 541-2021-00396 ("First Charge") with the EEOC on March 31, 2021.  The School District filed a Position Statement with the EEOC on or about June 25, 2021, and Posey submitted a rebuttal on August 13, 2021.

4. Posey filed Charge of Discrimination No. 541-2022-01127 ("Second Charge") with the EEOC on June 13, 2022.  With his Second Charge, Posey alleged retaliation for opposing the discrimination and harassment that formed the basis of the First Charge.

5. Posey requested a notice of his right to file a lawsuit on September 7, 2022, which the Department of Justice issued on October 19, 2022.

6. DCTA filed a grievance ("First Grievance") on Posey's behalf on September 3, 2020. The First Grievance challenged contractual violations by the School District regarding Posey's performance evaluations.

7.  The First Grievance proceeded through every step set forth in the CBA.  A neutral arbitrator issued an advisory award in Posey's favor—i.e., upholding the grievance and recommending corrections to the extra-contractual performance evaluations Posey received.

8.  Almost immediately after Posey and the School District received the arbitrator's advisory award in the First Grievance, DPS officials set about retaliating against Posey for having lodged the First Grievance.  DCTA filed a grievance ("Second Grievance") on Posey's behalf, alleging retaliation in violation of the CBA.

9.  The School District repudiated the grievance procedure set forth in the CBA by refusing to process the Second Grievance.  Faced with the School District's refusal to process the grievance, it was futile for DCTA and Posey to continue pursuing the Second Grievance.

10. Posey has exhausted all administrative and contractual prerequisites to filing the instant action.

## PARTIES

11. The Plaintiff, Eric Posey, who is African American/Black, was employed as an AI in the JROTC program at Manual High School from 2007 until 2022.  At all times pertinent to this case, Posey has resided in Fountain, Colorado.

12. The Defendant, School District No. 1 in the County of Denver and State of Colorado, is a Colorado public school district existing pursuant to applicable state law.  The School District's schools and administrative office are located in Denver, Colorado.

## GENERAL ALLEGATIONS

13. Prior to working as an AI instructor in the School District's JROTC program, Posey served for 22 years in the United States Army.  During his time in the Army, Posey worked in administration, supplies, artillery, and intelligence.

14. Posey possesses a Bachelor of Science degree in education, as well as a Master of Arts degree—also in education.

15. Posey worked in the JROTC program at Manual High School from 2007 until 2022. Between 2007 and 2018, Posey's work performance was evaluated by at least five different raters and eight different senior raters, all of whom rated Posey as "above average" or "excellent."  During that period, Posey's evaluations contained universally favorable comments about his performance.

16. In 2017, Posey was selected as the "Stellar Performer of the Year," an award which was presented to him at the Salute to Excellence in Education Scholarship Awards Gala by Senator Michael Bennett.

17. As an AI in the JROTC program, Posey was employed by DPS (i.e., not the Army). Accordingly, Posey received his salary payments from the School District.

18. At all times pertinent to this case, JROTC instructors have been expressly covered by the CBA between DPS and the School District.  Like all other bargaining unit members covered by the CBA, JROTC instructors, including Posey, have been third-party beneficiaries of the CBA.

19. The structure of the JROTC program in DPS is as follows:

A.  There is a central office located in the School District's administration building, from which the program is operated and managed.  The chief administrator of the office and the

4

JROTC program is the Director of Army Instruction ("DAI").  Steven Osterholzer, who is

Caucasian/White, became the DAI in 2017.

B.  There are approximately ten schools in the School District that operate JROTC

programs.  Each school with a JROTC program employs a Senior Army Instructor ("SAI"), who

is responsible for the overall management of the JROTC program at the school.  The SAI also

teaches JROTC classes and supervises JROTC extracurricular activities.  Lance Peterson, who is

Caucasian/White, became the SAI at Manual High School in 2019.

C.  Each school with a JROTC program also employs one or more Army Instructors

("AIs").  AIs are responsible for teaching JROTC classes and supervising JROTC extracurricular

activities.

20. At all times pertinent to this case, the procedures to be followed and the standards to be

employed in evaluating JROTC instructors was governed by a memorandum of understanding

("MOU") between the School District and DCTA, as well as by the CBA.

21. The Army's JROTC regulations do not set out the performance standards to be applied,

the procedures to be followed, nor the identities of persons to be involved in evaluating the

performance of JROTC instructors.  Rather, the Army regulations merely require evaluations to

be conducted, and they provide that school or school district evaluation forms be used in

evaluating JROTC instructors.

22. The MOU provides the following specific rules and requirements for the evaluation of

JROTC instructors in DPS:

A.  At a minimum, JROTC instructors must be evaluated on an annual basis.

      B.  Annual evaluations for JROTC instructors must be conducted on a particular U.S. Army appraisal form.

      C.  AIs, like Posey, must be evaluated by the SAI in the role of rater and by the school principal in the role of senior rater.

23. In negotiating the MOU, DCTA and the District intended that AIs would be evaluated by the SAI and the school principal, and not by the DAI. The reason negotiators did not intend for AIs to be evaluated by the DAI is the DAI works at a different location—i.e., the central JROTC office—and does not directly observe the work and performance of AIs.

24. DAI Osterholzer never observed Posey instructing students or coaching students in extracurricular activities.

25. Like the MOU, the CBA places requirements on the evaluation of JROTC instructors. For example, Article 10 of the CBA requires each instructor to have an evaluator who is designated at the beginning of the school year, who observes and provides feedback to the instructor during the school year, and who then gives the instructor an evaluation containing his/her opinions and assessments of the instructor's performance at the end of the school year.

26. The CBA does not allow for an individual who is not the instructor's designated evaluator or an individual who has not directly observed the instructor's performance to inject his/her opinions about the instructor into the instructor's evaluation.

27. The U.S. Army appraisal form used to evaluate AIs does not require or provide for the DAI to insert his/her own opinions and comments about the quality of an AI's performance into AI evaluations.

28. The U.S. Army appraisal form includes "concur/non-concur" boxes, which the DAI uses to guide his/her review of an AI's evaluation. The DAI's role is to review what the rater and senior rater did to ensure they followed the evaluation process correctly. If everything required has been done correctly, the DAI is supposed to check the "concur" box and sign the evaluation. If the DAI identifies a problem with the evaluation, he/she is supposed to check the "non-concur" box and use the space on the evaluation form for "additional comments" to address the issue.

29. A DAI is not supposed to use the "additional comments" space to rate or evaluate an AI, but rather to discuss whatever he/she thought was incorrect or problematic in the evaluation form or process.

30. During the 2018-19 school year, DAI Osterholzer directed a staff member to give Posey a written "counseling" on his (Osterholzer's) behalf. The "counseling" that Posey received directed him to wear his JROTC Class A or B uniform every day. DAI Osterholzer allowed other JROTC instructors who were Caucasian/white to wear whatever they chose without any "counseling" or other consequences.

31. "Counseling" can lead to disciplinary action and even termination.

32. There is nothing to prevent the School District from using incidents recorded in "counseling" documents as the basis for discharge or other forms of employment discipline.

33. DAI Osterholzer did not give Posey a reason why he had to wear his Class A or B uniform when other instructors were allowed to wear whatever they chose.

34. DAI Osterholzer scheduled professional development ("PD") programs for JROTC instructors at times of the day when Posey was still working at Manual, but other instructors were already finished working for the day.

35. When Posey arrived late to the PD programs, staff members would sometimes make negative comments, such as, "Manual finally made it," or "late as usual."  I believe DAI Osterholzer heard these comments, and he knew why I was a little late, but he never corrected or responded to the negative remarks.

36. On at least one occasion when I arrived at a PD program, a staff member said in reference to me, "Here comes the pimp."  I believe that DAI Osterholzer heard the comment, but he did nothing about it.

37. DAI Osterholzer made untrue and derogatory statements about Posey and his work performance.

38. At a meeting in or about September 2020, Posey and his union representative, Kate Martin, heard DAI Osterholzer claim that Posey "is the problem," that "people cannot work with him," and other, similar derogatory statements.  Also in attendance at the meeting were JROTC administrator Paul Mahoney, Manual Principal Joe Glover, and Manual Assistant Principal John Tricarico.

39. DAI Osterholzer did not provide any information or explanation regarding his comments about Posey during the September 2020 meeting, nor did he identify to Posey the people who allegedly claimed he was a problem or that they could not work with him.

40. In June 2021, in the arbitration hearing on Posey's First Grievance, the School District disclosed, for the first time, a May 30, 2020 memorandum about Posey written by Lance

Peterson.  Neither that memorandum, nor any of its contents, had ever been shared with Posey prior to the arbitration hearing, and Posey had never been given an opportunity to respond to them.

41. SAI Peterson testified in the arbitration hearing that he wrote the May 30, 2020 memorandum at the direction of DAI Osterholzer, who was his direct supervisor and evaluator. Peterson wrote the memorandum long after most of the events described in it had occurred.

42. SAI Peterson's May 30, 2020 criticisms of Posey were a significant departure from his recent evaluations of Posey's work performance.

43. Peterson was Posey's rater in the 2019-20 school year, and he gave posey ratings of "E" (i.e., excellent) on all of the performance factors in that evaluation.  Peterson testified at the arbitration hearing on Posey's First Grievance that Posey earned and deserved all of the "E" ratings he assigned him on all of the factors.

44. SAI Peterson observed Posey teaching in his classroom almost every day in 2019-20.  In sworn testimony, Peterson described Posey as "the most talented" instructor he had ever seen and described Posey's excellent command of the classroom as "firm yet caring."  Peterson also testified that Posey forged good relationships with students and their families, both in and outside of the JROTC program.

45. SAI Peterson also observed Posey coaching extracurricular activities in 2019-20. Peterson described Posey as an "excellent" coach.  According to Peterson, Posey was never "demeaning" toward or "hard" on students he was coaching but was appropriately strict and set high, yet attainable, expectations.

46. SAI Peterson viewed Posey as an expert in many JROTC extracurricular activities, including rifle drills.  Peterson attributed Posey's expertise to his time as a drill sergeant in the Army.

47. On January 19, 2021, DAI Osterholzer sent an email containing important email containing important JROTC information to all AIs in the School District except Posey.  Posey found out about the email from one of his colleagues.

48. When Posey brought the 1/19/21 email to Osterholzer's attention, Osterholzer said that Posey's name must have been dropped from the AI distribution list because he'd temporarily served as an acting SAI.  Osterholzer's explanation did not make sense, however, because other AIs had served as acting SAIs on many occasions in the past without their names ever being dropped of the AI email distribution list.  In fact, the list of email addresses to which Osterholzer sent his 1/19/21 email contained the addresses of both SAIs and AIs.

49. On March 18, 2021, Osterholzer sent another lengthy email containing important JROTC information to all AIs except Posey.  Again, Posey found out about the email from one of his colleagues.

50. Posey frequently received emails from the JROTC program about issues and policies that he did not need to act on at the time.  It was thus puzzling to Posey that Osterholzer would leave him off the distribution list for emails that pertained to important issues, policies, and procedures applicable to SAIs, AIs, and JROTC students, as was the case in January and March 2021.

51. During the 2019-20 school year, Posey's performance was evaluated by the SAI at Manual High School, Lance Peterson, as well as by Manual's assistant principal, John Tricarico.

52. Posey received his final performance evaluation for 2019-20 on August 26, 2020.  The evaluation was prepared by SAI Peterson, who again assigned Posey ratings of "excellent" on all of the performance factors in the evaluation and wrote favorable comments about Posey.

53. For example, commenting on Posey's performance, Peterson wrote: "First Sergeant Posey is highly effective as a JROTC classroom instructor and leadership mentor.  He is a JROTC curriculum expert…. He is the epitome of a professional soldier/teacher in appearance and performance…. With First Sergeant Posey's assistance, the Manual JROTC program as managed, maintained and secured thousands of dollars in equipment, uniforms and supplies…."

54. Posey's 2019-20 evaluation also contained negative comments about his performance, written by DAI Osterholzer.  Osterholzer was not Posey's evaluator, had not observed his performance as a JROTC instructor in 2019-20, and had no business evaluating Posey's performance under the DPS-JROTC evaluation system.

55. In 2019-20, DAI Osterholzer was neither an SAI nor principal tasked with evaluation responsibilities over Posey or any other AI in the School District.  Rather, as the DAI, Osterholzer's role in evaluations was merely to ensure that SAIs and principals properly adhered to the procedures governing AI evaluations.

56. DAI Osterholzer based his negative comments about Posey and the Manual JROTC program on an inaccurate and biased view of Posey and his (and Manual's JROTC program's) participation in team-based competitions, as compared with the participation of AIs and JROTC programs from other schools.

57. As overlooked by Osterholzer, Manual had a high percentage of minority students, as well as a very high percentage who qualify for free and reduced-rate lunch programs.  That is,

many students from Manual, including students in the JROTC program, were living in poverty and did not benefit from the same privileges and opportunities as students from more affluent schools/neighborhoods.  Those restrictions, among others, affected Manual's ability to participate in extracurricular competitions.

58. In 2019-20, Manual's JROTC did not field programs or contestants for two extracurricular events—the unarmed competition at the 2019 Rocky Mountain Regional Drill Meet and the exhibition drill without arms at the All-City Drill Meet.  However, other DPS schools with JROTC programs, including schools much larger than Manual, also did not field teams for those same events.

59. Six DPS schools, including schools with large JROTC programs like Washington, East, and North High Schools, did not filed teams for the unarmed competition at the 2019 Rocky Mountain Drill Meet.  North, West, and East High Schools did not field teams for the exhibition drill without arms at the 2018-19 All-City Drill Meet.

60. Manual fielded teams for all the other events at the above-mentioned competitions. However, other DPS schools with JROTC programs did not.  For example, at the All-City Drill Meet in 2018-19, West High School failed to field a team for the platoon drill with arms; South High School—a large school with a large JROTC program—failed to field a team for the exhibition drill with arms; JFK, West, Montbello, and Lincoln High Schools failed to field freshman drill teams; Montbello and West High Schools failed to field teams for the platoon drill without arms; and Lincoln, North, West, and JFK High Schools all failed to field teams for the Guidon event.

61. In the 2018-19 All-City Drill Meet, Manual teams placed fifth out of ten in color guard and third out of six in freshman drill—above much larger schools like East, South, and Washington.  At the same meet, three Manual JROTC students won trophies for their performance in the individual "Drill Down" competitions, in which two of the students took second place and the other student took third place out of twenty competitors in each competition.

62. Manual's team twice advanced to the second round in the JROTC National Academic Bowl.

63. Manual's participant placed second at the Windsor Gardens speaking competition in 2019-20.

64. Two Manual JROTC students were selected as the valedictorian and the salutatorian of the school's 2021 graduating class.

65. Posey was not solely responsible for Manual's JROTC program.  Indeed, it was the SAI, not Posey, who had overall responsibility for the school's program, including making decisions about fielding teams in competitions.

66. DAI Osterholzer made unsupported, negative, racist comments about another African American/Black JROTC instructor, Jerome Wilford.  During a summer camp for JROTC students in 2018, First Sergeant Wilford twice overheard one of Osterholzer's staff members, LTC Kevin Black, comment that "we have white boy privilege."  Wilford reported the comments to Osterholzer, who indicated that he'd only heard the comment once.  Osterholzer did nothing in response to Wilford's report.

67. During the same 2018 summer camp, Wilford observed JROTC instructor, 1SG Paul Mahoney, leading students in chants containing racially derogatory references, such as referring to Montbello High School—a predominantly African American/Black school—as "Montghetto." DAI Osterholzer was aware of the chants but did nothing to stop them.

68. As he'd done with Posey's evaluation, DAI Osterholzer inserted unsupported and negative comments about Wilford in his 2019-20 performance evaluation even though he was not Wilford's evaluator or rater.

69. The overwhelming majority of JROTC instructors employed by DPS during the relevant period were Caucasian/White. A very small number of JROTC instructors during the same period were African American/Black.

70. DAI Osterholzer made unsupported and negative comments about a disproportionately large percentage of African American/Black instructors, as compared with Caucasian/White instructors.

71. Osterholzer also engaged in disparate treatment of Hispanic/Latino instructors. For example, former AI Jose M. Caraballo, who is Hispanic/Latino, worked at Lincoln High School with Osterholzer when Osterholzer was the SAI assigned to the school. During the period Osterholzer supervised Caraballo, he rarely, if ever, included Caraballo in any work-related conversations or decisions, but discussed and decided these matters with the Caucasian/White AI who worked at the school. Osterholzer disregarded Caraballo's opinions about work-related matters and kept work-related information secret from him.

72. Command Sergeant Major Patrick Roddy (ret.), who is Caucasian/White, worked for DAI Osterholzer in DPS for approximately two-and-one-half years. Osterholzer often directed Roddy

14

to inspect and evaluate the classroom procedures and techniques of particular instructors.  The
targeted instructors were African American, Latino, and female.  Osterholzer appeared
disappointed when those instructors received favorable reports.

73. Posey filed his First Charge of discrimination on March 31, 2021.  In the charge, Posey
alleged, *inter alia*, that the School District discriminated against him because of his race in
violation of Title VII of the Civil Rights Act.

74. The School District filed a position statement regarding Posey's First Charge on or about
June 25, 2021, and Posey filed a rebuttal on or about August 17, 2021.

75. On or about September 3, 2021, DCTA filed its First Grievance on Posey's behalf.  The
grievance challenged violations of the CBA and MOU by the School District regarding Posey's
2019-20 performance evaluation.

76. The First Grievance proceeded through each of the steps outlined in the CBA.  The
grievance procedure began with several steps of internal review by School District administrators
and ended with advisory arbitration by a neutral arbitrator.

77. The arbitrator issued her decision on October 5, 2021.  Unlike the School District
administrators who uniformly denied the First Grievance, the arbitrator recommended:

> A.    that the grievance be granted;
>
> B.    that Posey's 2019-20 performance evaluation be rescinded and removed
>        from all School District files;
>
> C.    that the School District promptly reissue and refile Posey's 2019-20
>        evaluation without Osterholzer's comments;

D.    that the JROTC program be directed to follow the requirements for evaluations set forth in the CBA and by established past practices; and

E.    that all incoming JROTC officers be informed and educated about their responsibilities under the CBA, past practice, and general principles of collective bargaining.

78. The School District received the arbitrator's decision on or about October 5, 2021.

79. Shortly thereafter, School District/JROTC officials initiated a pattern of retaliation against Posey.  For example:

A.    The School District committed to tearing down the JROTC program at Manual.  Posey's then-supervisors, LTC Kevin Black and 1SG Paul Mahoney, informed him on or about November 4, 2021 that Manual's JROTC program would be "torn down and rebuilt."  Prior to that meeting, Posey was not aware of any plans to dismantle Manual's JROTC program.

B.    Soon after informing Posey that Manual's JROTC program was slated to be torn down, a School District official, LTC Gordon Crawford, issued Posey a "counseling" form, insinuating that Posey was not adequately performing his job duties.  However, just as he always had, Posey *was* performing all his duties at or above a satisfactory level.

C.    In December 2021, School District officials Kevin Black and Gordon Crawford updated the "counseling" form to add new accusations of unsatisfactory performance by Posey.  The accusations were false—Posey

16

was performing all of his duties at or above a satisfactory level, just as he
had throughout his employment with the District.

D.     On or about February 4, 2022, Black and Crawford gave Posey a letter of
concern, which formally expressed concerns about Posey's job performance.
However, like the "counseling" forms in prior months, the letter of concern
painted a false picture of Posey's job performance.

E.     On or about March 15, 2022, Black, Mahoney, and Crawford informed
Posey that they were placing him on a performance improvement plan
("PIP").  Ostensibly, a PIP is a tool the School District uses to correct
performance concerns when an employee is insufficiently carrying out their
job duties.  However, Posey *was* sufficiently carrying out all of his job
duties—i.e., there was not a legitimate reason for the School District to
place Posey on a PIP.

F.     In May 2022, Black and Mahoney told Posey they intended to eliminate the
JROTC program at Manual and that he would be ineligible to apply for
JROTC instructors at other schools because he was on a PIP.  Upon further
inquiry, Posey learned that the purported restriction on him applying based
on his PIP was false.

G.     Also in May 2022, School District officials told Posey that he'd failed his
PIP and that they accordingly planned to "decertify" him, which would
render him unqualified to teach in *any* JROTC program in the School
District.

17

80. Black, Mahoney, Crawford, and others, including Principal Joe Glover, created a false narrative about Posey and the Manual JROTC program in order to retaliate against him for filing and winning a grievance against former DAI Osterholzer.

81. On June 1, 2022, Posey received notice that he was being decertified based on, *inter alia*, inappropriate relationships with cadets; conduct that does not meet the standards expected of an Army officer, violating public trust, and causing embarrassment to the Army.  These and other false criticisms dealt a crushing blow to Posey, whose long history of positive performance reviews showed him to be an upstanding officer with a proud record of service to his country.

82. On June 5, 2022, Posey filed his rebuttal to the decertification.  Two months later, JROTC COL Kenneth R. Jones rescinded the decertification, but Posey's employment with the School District had already been non-renewed.

83. The CBA prohibits the School District from retaliating against employees who utilize the grievance process.

84. DCTA and Posey filed their Second Grievance on or about DATE because of the retaliatory actions toward Posey by School District officials after the arbitrator issued her October 5, 2021 decision regarding the First Grievance.

85. The School District claimed the Second Grievance was invalid and refused to participate in the procedure set forth in the CBA.  Nevertheless, DCTA and Posey tried to take the grievance to advisory arbitration, but their efforts were stalled when the School District refused to select an arbitrator.

## FIRST CLAIM FOR RELIEF
### Race-Based Discrimination in Violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-2(a)

86. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 83, above.

87. Title VII of the Civil Rights Act prohibits employment practices that discriminate against persons on the basis of race.

88. As herein alleged, the Defendant targeted, mistreated, adversely evaluated, and discharged the Plaintiff on the basis of his race—i.e., African American.

89. As a direct, legal, and proximate result of the Defendant's discriminatory employment practices, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

90. The Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

91. Plaintiff is entitled to his reasonable attorneys' fees and costs of suit.


## SECOND CLAIM FOR RELIEF
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-3(a)

92. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 89, above.

93. Title VII of the Civil Rights Act prohibits employers from discriminating against an employee because he has opposed unlawful employment practices.

19

94. Plaintiff opposed unlawful employment practices by the Defendant when he filed a formal charge of discrimination based on race with the Equal Employment Opportunity Commission.

95. As a result of Plaintiff's complaint, the Defendant's agents and employees took materially adverse action against the Plaintiff, including, but not limited to, issuing disciplinary warnings, such as "counseling" forms; issuing letters of concern; placing Plaintiff on a performance improvement plan; negatively evaluating Plaintiff's job performance; threatening to eliminate the JROTC program at Manual; decertifying Plaintiff; and terminating Plaintiff's employment.

96. Defendants' adverse actions constituted retaliatory workplace harassment.

97. Defendants' retaliatory actions would deter a reasonable person from engaging in protected activity under Title VII.

98. As a direct, legal, and proximate result of the Defendant's retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries in an amount to be proven at trial.

99. Plaintiff is entitled to his reasonable attorneys' fees and costs of suit.


### THIRD CLAIM FOR RELIEF
**Breach of Contract**

100.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 97, above.

101.    The CBA is a valid and binding contract, enforceable by the parties thereto as well as covered employees, as third-party beneficiaries.

102.　　At all times relevant to this action, Plaintiff is and was a third-party beneficiary to the CBA.

103.　　To the extent Plaintiff was responsible for performing any contractual obligations under the CBA in this context, he did so.

104.　　The Defendant failed to perform its contractual obligations by retaliating against Plaintiff for his participation in the First Grievance.

105.　　As a direct, legal, and proximate result of the Defendant's breach, Plaintiff has sustained, and will continue to sustain, economic damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Eric Posey, respectfully requests that this Court enter judgment for the Plaintiff and against the Defendant on all claims for relief and award to the Plaintiff:

A.　full monetary compensation for all lost wages and benefits, including retirement benefits;

B.　monetary compensation for emotional distress, pain and suffering;

C.　injunctive relief ordering the Defendant to reinstate the Plaintiff to his former position with no loss of seniority, longevity, salary placement or any other benefits of employment;

D.　his costs and reasonable attorney fees; and

E.　such other and further relief as the court deems just and appropriate.

## **JURY TRIAL DEMAND**

The Plaintiff hereby requests a trial by jury on all issues so triable.


DATED this 17th day of January 2023.

Respectfully submitted,


*/s/ Sharyn E. Dreyer*
Sharyn E. Dreyer
Colorado Education Association
1500 Grant Street
Denver, CO 80203
(303) 837-1500
Fax: (303) 861-2039
sdreyer@coloradoea.org

Plaintiff's Address:

Eric Posey
1074 Clogger Lane
Fountain, CO 80817