IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-00137-PAB-MDB

ERIC POSEY,

    Plaintiff,

v.

SCHOOL DISTRICT NO. 1 IN THE COUNTY OF DENVER AND STATE OF COLORADO,

    Defendant.

_____

**ORDER**
_____

This matter comes before the Court on Defendant's Motion to Dismiss [Docket No. 15], filed by defendant School District No. 1 in the County of Denver and State of Colorado (the "District"). Plaintiff Eric Posey filed a response. Docket No. 25. The District filed a reply. Docket No. 26. Mr. Posey claims that the District discriminated against him on the basis of race and then retaliated against him after he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and a grievance. Docket No. 1 at 19-20, ¶¶ 88, 94-95. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I.    BACKGROUND**[1]

Mr. Posey, an African American/Black man, was employed as an Army Instructor in the District's Junior Reserve Officer Training Corps ("JROTC") program at Manual

---

[1] The following facts are taken from plaintiff's complaint, Docket No. 1, and are presumed to be true for the purpose of ruling on defendant's motion to dismiss. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

High School ("Manual") in Denver, Colorado from 2007 until 2022.  Docket No. 1 at 1, 3, ¶ 11.  Mr. Posey has a Bachelor of Science degree in education and a Master of Arts degree in education.  *Id*. at 4, ¶ 14.  Prior to working as an Army Instructor in the District's JROTC program, Mr. Posey served in the United States Army for twenty-two years.  *Id*., ¶ 13.

Ten schools in the District operate JROTC programs and each school employs a Senior Army Instructor ("SAI"), who is responsible for overall management of the JROTC program at the school, and one or more Army Instructors, who are responsible for teaching JROTC classes and supervising JROTC extracurricular activities.  *Id*. at 5, ¶ 19 B-C.  The District also employs a Director of Army Instruction ("DAI") in its central office to manage the JROTC program.  *Id*. at 4-5, ¶ 19 A.  Steven Osterholzer, a White man, became the DAI in 2017.  *Id*.  Lance Peterson, a White man, became the SAI at Manual in 2019.  *Id*. at 5, ¶ 19 B.  During Mr. Posey's employment, the majority of JROTC instructors employed by the District were White.  *Id*. at 14, ¶ 69.

The procedures for evaluating JROTC instructors are governed by a Collective Bargaining Agreement ("CBA") and Memorandum of Understanding ("MOU") between the District and the Denver Classroom Teachers Association ("DCTA").  *Id*. at 1-2, 5, ¶ 20.  The MOU requires that JROTC instructors must be evaluated on an annual basis by their SAI and the school principal using an Army form.  *Id*. at 5-6, ¶ 22.  The MOU did not intend for the DAI to evaluate Army Instructors because the DAI works at a different location and does not directly observe the Army Instructor's JROTC work.  *Id*. at 6, ¶ 23.  The CBA does not allow a District official who has not directly observed the instructor's performance to inject his opinions into an evaluation.  *Id*., ¶ 26.

During the 2018-2019 school year, Mr. Osterholzer told a staff member to give Mr. Posey a written "counseling" that directed Mr. Posey to wear his JROTC uniform every day. *Id*. at 7, ¶ 30. Mr. Osterholzer allowed JROTC instructors who were White to wear anything they chose. *Id*. Mr. Osterholzer did not give Mr. Posey a reason why Mr. Posey had to wear his uniform when White instructors were allowed to wear any clothes. *Id*., ¶¶ 30, 33. Mr. Osterholzer scheduled professional development programs for JROTC instructors at times when Mr. Posey was still working at Manual, while other instructors were finished working for the day. *Id*. at 8, ¶ 34. When Mr. Posey arrived late to the meetings, other staff members would make comments such as, "Manual finally made it," "late as usual," or "[h]ere comes the pimp." *Id*., ¶¶ 35-36. Mr. Osterholzer heard these comments, but never responded to the remarks. *Id*.

During a JROTC summer camp in 2018, one of Mr. Osterholzer's staff members, Kevin Black, commented twice, "we have white boy privilege." *Id*. at 13, ¶ 66. At that same camp, another JROTC instructor, Paul Mahoney, led the students in chants referring to Montbello High School, which is a predominately African American school, as "Montghetto." *Id*. at 14, ¶ 67. Mr. Osterholzer was aware of the chants, but did not stop the chants. *Id*. In September 2020, Mr. Posey and his union representative heard Mr. Osterholzer claim that Mr. Posey is "the problem" and that "people cannot work with him." *Id*. at 8, ¶ 38.

Between 2007 to 2018, Mr. Posey received "above average" or "excellent" ratings on all his performance evaluations. *Id*. at 4, ¶ 15. During the 2019-2020 school year, Mr. Posey's performance was evaluated by Mr. Peterson, the SAI at Manual, and John Tricarico, Manual's assistant principal. *Id*. at 10, ¶ 51. On the 2019-2020 final performance evaluation, Mr. Peterson gave Mr. Posey "excellent" ratings on all

3

performance factors.  *Id*. at 11, ¶ 52.  However, the performance evaluation also contained negative comments about Mr. Posey's performance written by Mr. Osterholzer.  *Id*., ¶ 54.  Mr. Osterholzer did not observe Mr. Posey's performance during this academic year.  *Id*.

On January 19, 2021, Mr. Osterholzer sent an email containing important JROTC information to all Army Instructors in the District, except for Mr. Posey.  *Id*. at 10, ¶ 47.  Mr. Posey informed Mr. Osterholzer that he did not receive the email.  *Id*., ¶ 48.  On March 18, 2021, Mr. Osterholzer sent another email containing important JROTC information to all Army Instructors in the District, except for Mr. Posey.  *Id*., ¶ 49.

On September 3, 2020, DCTA filed a grievance on Mr. Posey's behalf (the "First DCTA Grievance"), challenging "violations of the CBA and MOU by the School District regarding Posey's 2019-20 performance evaluation."  *Id*. at 2, 15, ¶¶ 6, 75.[2]  On March 31, 2021, Mr. Posey filed a charge of discrimination with the EEOC, alleging that the District discriminated against him because of his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  *Id*. at 2, 15, ¶¶ 3, 73.

On October 5, 2021, a neutral arbitrator issued a decision granting the First DCTA Grievance and recommending that the District rescind Mr. Posey's 2019-2020 performance evaluation and reissue the evaluation "without Osterholzer's comments."  *Id*. at 15, ¶¶ 77 A-C.  On November 4, 2021, Mr. Black and Mr. Mahoney, informed Mr. Posey that Manual's JROTC program would be "torn down and rebuilt."  *Id*. at 16, ¶ 79

---

[2] Mr. Posey's complaint contains a discrepancy regarding the date of the First DCTA Grievance.  In one paragraph, Mr. Posey states that the First DCTA Grievance was filed on September 3, 2020, *see* Docket No. 1 at 2, ¶ 6, whereas another paragraph states that it was filed on September 3, 2021.  *See id*. at 15, ¶ 75.  The Court presumes that the reference to 2021 is a typographical error because Mr. Posey's response to the motion to dismiss states that the First DCTA Grievance was filed on September 3, 2020.  *See* Docket No. 25 at 8.

A.  Shortly after, a school district official, Kevin Crawford, issued Mr. Posey a counseling form insinuating that Mr. Posey was not adequately performing his job duties.  *Id*., ¶ 79 B.  In December 2021, Mr. Black and Mr. Crawford added new, false accusations to the counseling form regarding Mr. Posey's unsatisfactory performance.  *Id*. at 16-17, ¶ 79 C.  On February 4, 2022, Mr. Black and Mr. Crawford gave Mr. Posey a letter of concern, formally expressing issues about his job performance.  *Id*. at 17, ¶ 79 D.  On March 15, 2022, Mr. Black, Mr. Mahoney, and Mr. Crawford placed Mr. Posey on a performance improvement plan ("PIP"), even though Mr. Posey was satisfactorily performing his job.  *Id*., ¶ 79 E.  In May 2022, Mr. Black and Mr. Mahoney informed Mr. Posey that they intended to eliminate the JROTC program at Manual and falsely told Mr. Posey that he would be ineligible to apply for other JROTC positions because he was on a PIP.  *Id*., ¶ 79 F.  In May 2022, District officials told Mr. Posey that he failed his PIP and therefore the District would "decertify" him, which would render him unqualified to teach at any JROTC program in the District.  *Id*., ¶ 79 G.

On June 1, 2022, Mr. Posey received notice that he was being decertified based on "inappropriate relationships with cadets; conduct that does not meet the standards expected of an Army officer, violating public trust, and causing embarrassment to the Army."  *Id*. at 18, ¶ 81.  By June 2022, Mr. Posey's employment with the District was "non-renewed."  *Id*., ¶ 82.

On June 13, 2022, Mr. Posey filed a second charge of discrimination with the EEOC alleging retaliation.  *Id*. at 2, ¶ 4.  DCTA also filed a second grievance on Mr. Posey's behalf, alleging retaliation in violation of the CBA.  *Id*. at 3, ¶ 8.  The CBA

5

prohibits the District from retaliating against employees who utilize the grievance process.  *Id*. at 18, ¶ 83.[3]

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting

---

[3] The District requests that the Court consider a document outside the pleadings in ruling on the motion to dismiss.  Docket No. 15 at 2 n.1.  Specifically, the District requests that the Court consider the MOU between the District and DCTA.  *See* Docket No. 15-1.  Generally, a court should not consider any evidence beyond the pleadings when ruling on a 12(b)(6) motion, *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019), and if the court considers matters outside the complaint, "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, the Tenth Circuit has recognized a "limited exception" to this rule: the "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Waller*, 932 F.3d at 1282; *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (recognizing that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss").  However, a court has "broad discretion in determining whether or not to accept materials beyond the pleadings."  *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998).  The Court finds that defendant has not shown that the MOU is central to plaintiff's three claims and therefore the Court will not consider the MOU exhibit in ruling on defendant's motion to dismiss.

*Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

### III.  ANALYSIS

Mr. Posey asserts three claims against the District: A) race discrimination in violation of Title VII; B) retaliation in violation of Title VII; and C) breach of contract.  Docket No. 1 at 19-21.  The District moves to dismiss all claims.  Docket No. 15 at 6-12.

#### A. Title VII Race Discrimination Claim

Mr. Posey's first claim alleges race discrimination in violation of Title VII.  Docket No. 1 at 19, ¶¶ 86-91.  Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual

with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).  Such claims can be demonstrated either by "direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic" or by "using the burden-shifting framework set forth in *McDonnell Douglas [Corp. v. Green*, 411 U.S. 792 (1973)]." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 213 (2015).[4]  Under *McDonnell Douglas*, plaintiff must first establish a *prima facie* case of discrimination.  *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021).  If plaintiff establishes a *prima facie* case, the burden shifts to defendant "to provide a legitimate, nondiscriminatory reason" for the employment action.  *Id*.  If defendant provides a legitimate non-discriminatory reason, the burden shifts back to plaintiff to "show pretext." *Id*.

To establish a *prima facie* case of disparate treatment, "a plaintiff must show that (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Mack v. J.M. Smuckers Co.*, 2023 WL 5217705, at *4 (10th Cir. Aug. 15, 2023) (citing *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011)); *see also Ibrahim,* 994 F.3d at 1196.  A plaintiff's burden at the *prima facie* stage is "not onerous." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1267 (10th Cir. 2015) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).  At the motion to dismiss stage, a "complaint raising a claim of discrimination does not need to

---

[4] The District and Mr. Posey analyze plaintiff's race discrimination claim under the *McDonnell Douglas* framework.  *See* Docket No. 15 at 6; Docket No. 25 at 6-7.  Because neither party argues that Mr. Posey's first claim involves direct evidence of discrimination, the Court will evaluate the claim under the *McDonnell Douglas* framework.

conclusively establish a prima facie case of discrimination, but . . . a plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory [] motive with something besides 'sheer speculation.'" *Bekkem v. Wilkie*, 915 F.3d 1258, 1274-75 (10th Cir. 2019) (quoting *Khalik*, 671 F.3d at 1194).

Generally, an adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (quoting *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir. 2004)). A plaintiff can establish an inference of discrimination in many ways, including by showing (1) "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus;" (2) "preferential treatment given to employees outside the protected class;" or (3) "the timing or sequence of events leading to plaintiff's termination." *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (citation omitted); *see also Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1193 (10th Cir. 2018); *Laul v. Los Alamos Nat'l Lab'ys*, 714 F. App'x 832, 836 (10th Cir. 2017) (unpublished); *Aluru v. Anesthesia Consultants*, 176 F. Supp. 3d 1116, 1126 (D. Colo. 2016) (collecting cases).

The District argues that Mr. Posey has not established the last element of his *prima facie* case because Mr. Posey has not plausibly alleged any facts that an adverse action took place under circumstances giving rise to an inference of race discrimination. Docket No. 15 at 6. The District argues that the comments made by staff members – including "Manual finally made it," "late as usual," or "[h]ere comes the pimp" – cannot establish an inference of discrimination because Mr. Posey fails to allege that these comments were race-based. *Id*. at 7. Likewise, the District argues that the complaint's

9

allegations regarding Mr. Osterholzer's comments are either conclusory or unrelated to Mr. Posey's race.  *Id*. at 7-9.  The District also contends that the complaint fails to allege that the directive for Mr. Posey to wear his uniform was race-based.  *Id*. at 6.[5]

Mr. Posey maintains that the complaint plausibly alleges that the District took adverse actions, including decertifying him as a JROTC instructor and not renewing his employment, because of his race.  Docket No. 25 at 7.  Mr. Posey argues that he was subjected to stereotypical race-related comments.  *Id*.  Furthermore, Mr. Posey argues that he was treated differently than his White colleagues because he was required to wear his JROTC uniform every day, while his White colleagues were allowed to wear anything.  *Id*.

The Court finds that Mr. Posey has plausibly alleged that his termination occurred under circumstances giving rise to an inference of discrimination.  The complaint alleges that, during the 2018-2019 school year, Mr. Osterholzer told a staff member to give Mr. Posey a written "counseling" that directed Mr. Posey to wear his JROTC uniform every day.  Docket No. 1 at 7, ¶ 30.  However, Mr. Osterholzer allowed JROTC instructors who were White to wear anything they chose.  *Id*.  Mr. Osterholzer did not give Mr. Posey a reason why Mr. Posey had to wear his uniform when White instructors were allowed to wear any clothes.  *Id*., ¶¶ 30, 33.  Furthermore, when Mr. Osterholzer heard another staff member say, "[h]ere comes the pimp" to Mr. Posey, Mr. Osterholzer did nothing in response to this comment.  *Id*. at 8, ¶ 36.[6]  The Court finds that Mr. Osterholzer's actions "could be viewed as reflecting a discriminatory animus"

---

[5] The District does not challenge the first or second elements of the *prima facie case*.  Accordingly, the Court presumes that Mr. Posey has established those elements and will proceed to analyzing the third element.
[6] Mr. Osterholzer also excluded Mr. Posey from two emails that he sent to all other Army Instructors.  Docket No. 1 at 10, ¶¶ 47-49.

10

towards African Americans.  *See Plotke*, 405 F.3d at 1101.  Mr. Osterholzer treated Mr. Posey differently from other employees outside of Mr. Posey's protected class by requiring Mr. Posey to wear his uniform with no explanation, while allowing White Army Instructors to wear whatever they chose.  *See* Docket No. 1 at 7, ¶¶ 30, 33; *see Plotke*, 405 F.3d at 1101.  Defendant contends that the term "[h]ere comes the pimp" is "not inherently race-based."  Docket No. 26 at 4.  However, at the motion to dismiss stage, the Court rejects this argument.  *See Pulliam v. Wichita State Univ.*, 2016 WL 6125028, at *3 (D. Kan. Oct. 20, 2016) (noting that whether the term "pimp" involves a "discriminatory racial connotation" is often a fact issue); *Perkins v. Nat'l Express Corp.*, 105 F. Supp. 3d 970, 978 (N.D. Cal. 2015) (finding that a "pimp" reference directed at an "African American male driving a luxury car" could imply a "discriminatory meaning").  Mr. Osterholzer's actions could be viewed as reflecting a discriminatory animus towards Mr. Posey because of his race, and therefore the Court finds that these allegations are sufficient to give rise to an inference of discrimination at the motion to dismiss stage.  *See Bekkem*, 915 F.3d at 1274-75 (noting that a complaint at the motion to dismiss stage "does not need to conclusively establish a prima facie case of discrimination").[7]  "While discovery may prove otherwise," at this stage in the proceedings, Mr. Posey has plausibly alleged a Title VII race discrimination claim.  *See Ballage v. Hope & Home*, No. 21-cv-01320-PAB-KMT, 2022 WL 3716519, at *7 (D. Colo. Aug. 29, 2022), *report and recommendation adopted*, 2022 WL 4290471 (D. Colo. Sept. 16, 2022).

---

[7] In reply, the District argues that Mr. Osterholzer's actions cannot raise an inference of discrimination because Mr. Osterholzer was not involved in the decision to decertify Mr. Posey.  Docket No. 26 at 2.  The District argues that Mr. Osterholzer "retired in 2020."  Docket No. 15 at 3.  The complaint does not state that Mr. Osterholzer retired in 2020.  Accordingly, the Court declines to consider this argument at the motion to dismiss stage.  *See Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144 (10th Cir. 2023) (noting that a court must accept all "well-pleaded facts" in the complaint "as true").

Accordingly, the Court denies the portion of the District's motion to dismiss the Title VII race discrimination claim.

### B. Title VII Retaliation Claim

Mr. Posey's second cause of action asserts a retaliation claim under Title VII. Docket No. 1 at 19-20, ¶¶ 92-99.  Mr. Posey alleges that the District retaliated against him in response to Mr. Posey's March 2021 EEOC charge and his First DCTA Grievance.  *Id*. at 16-17, 20, ¶¶ 78-79, 94-95; Docket No. 25 at 8.  Title VII forbids retaliation against an employee because he has "opposed" any practice made unlawful by Title VII or because he has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  Where there is no direct evidence of retaliation, the burden-shifting analysis established in *McDonnell Douglas* also applies to Title VII retaliation claims. *Singh v. Cordle*, 936 F.3d 1022, 1042 (10th Cir. 2019).  To establish a *prima facie* case of retaliation, a plaintiff must show: (1) engagement in activity protected under Title VII, (2) a "materially adverse" employment action, and (3) a "causal connection" between the protected activity and the materially adverse employment action.  *Id.*

The District argues that Mr. Posey has failed to establish that the First DCTA Grievance is protected activity under Title VII.  Docket No. 15 at 11.  Furthermore, the District argues that Mr. Posey has failed to plead a causal connection between the March 2021 EEOC charge and any alleged adverse action.  *Id*. at 10.[8]

---

[8] Mr. Posey's only argument in support of his retaliation claim states,

> Mr. Posey has pled a plausible claim of retaliation under Title VII.  In its Motion to Dismiss[,] the Defendant argues that Mr. Posey has not alleged that the adverse actions would not have occurred but-for his protected activity.  However, the allegations in Mr. Posey's Complaint meet the pleading requirements of Rule

12

### 1) First DCTA Grievance

The District argues that Mr. Posey has failed to establish that his First DCTA Grievance is protected activity under Title VII because the complaint alleges that this grievance was filed for alleged violations of the CBA, rather than opposing unlawful discrimination under Title VII.  Docket No. 15 at 11; *see also* Docket No. 26 at 6.  Mr. Posey does not address this argument in his response.  *See* Docket No. 25 at 8.

"Protected activity for the purposes of Title VII retaliation includes either (1) participating in or initiating a Title VII proceeding or (2) opposing discrimination made unlawful by Title VII."  *Boese v. Fort Hays State Univ.*, 814 F. Supp. 2d 1138, 1146 (D. Kan. 2011), *aff'd*, 462 F. App'x 797 (10th Cir. 2012) (unpublished); *see also* 42 U.S.C. § 2000e-3(a).  Protected activity can therefore range from filing formal EEOC charges to "voicing informal complaints to superiors" about discrimination.  *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004).  A plaintiff "doesn't need to show that she reported an actual Title VII violation; rather, she must only show 'a reasonable good-faith belief that' she was opposing discrimination."  *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 890 (10th Cir. 2018) (quoting *Hertz*, 370 F.3d at 1015-16).

The Court finds that Mr. Posey has not alleged any facts suggesting that filing the First DCTA Grievance constituted protected activity under Title VII.  The complaint states that DCTA filed the first grievance on Mr. Posey's behalf on September 3, 2020.

---

12(b)(6).  The Complaint alleges that Mr. Posey engaged in protected opposition to discrimination when he filed his March 31, 2021 complaint with the EEOC and filed his first grievance with the School District.  The Complaint also alleges that, after Mr. Posey filed these charges, the Defendant retaliated against him for his protected activities by taking actions which culminated in his nonrenewal from the District.

Docket No. 25 at 8.  Mr. Posey's argument contains no citation to legal authority and is unresponsive to defendant's specific arguments as to the *prima facie* elements.

Docket No. 1 at 2, ¶ 6.  The complaint states that the "First Grievance challenged *contractual violations* by the School District regarding Posey's performance evaluations."  *Id*. (emphasis added).  Specifically, the "grievance challenged violations of the CBA and MOU by the School District regarding Posey's 2019-20 performance evaluation."  *Id*. at 15, ¶ 75.  Mr. Posey has not alleged any facts suggesting that he had a "reasonable good-faith belief" that he was opposing any type of discriminatory conduct governed by Title VII when filing the First DCTA Grievance.  *See Fassbender*, 890 F.3d at 890; *see also Dean v. Computer Scis. Corp.*, 384 F. App'x 831, 838 (10th Cir. 2010) (unpublished) ("employee's complaints regarding unfair treatment, no matter how unconscionable, cannot be 'protected opposition to discrimination' unless the basis for the alleged unfair treatment is some form of *unlawful* discrimination"); *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) ("Opposition to an employer's conduct is protected by [Title VII's anti-retaliation provision] only if it is opposition to a 'practice made an unlawful employment practice by Title VII.'") (citation and alteration omitted)).  Because the complaint only alleges that the First DCTA Grievance challenged the District's contractual violations of the CBA and MOU, *see* Docket No. 1 at 15, ¶ 75, the complaint does not establish that the grievance was protected activity under Title VII.  *See Fassbender*, 890 F.3d at 890; *see also Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) ("General complaints about company management and one's own negative performance evaluation will not suffice" to establish protected activity); *Harp v. Dep't of Hum. Servs., Colo. Mental Health Inst. at Pueblo*, 932 F. Supp. 2d 1217, 1230 (D. Colo. 2013) ("Complaints regarding work-place procedures that are unrelated to race, color, religion, sex, or national origin, are not protected activities under Title VII, and thus, do not satisfy the first prong of the prima

14

facie requirements for retaliation."); *Brush v. Sears Holdings Corp.*, 466 F. App'x 781, 787 (11th Cir. 2012) (unpublished) ("Disagreement with internal procedures does not equate with 'protected activity' opposing discriminatory practices."). Therefore, Mr. Posey has failed to establish a *prima facie* case of retaliation based on the First DCTA Grievance.

### 2) March 2021 EEOC Charge

The District argues that Mr. Posey has failed to plead a causal connection between the March 2021 EEOC charge and any alleged adverse action. Docket No. 15 at 10. The District asserts that Mr. Posey cannot rely on temporal proximity alone to establish a causal connection because there was at least a six-month timespan between Mr. Posey's March 2021 EEOC charge and any alleged retaliatory actions, which occurred after October 2021. *Id*. at 11-12.[9] Mr. Posey does not address the District's arguments. *See* Docket No. 25 at 8.

To establish a causal connection, a plaintiff must "present evidence of circumstances that justify an inference of retaliatory motive." *Bekkem*, 915 F.3d at 1271 (quoting *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)). "Temporal proximity – when the protected conduct is closely followed by the adverse action – is often the basis for inferring a causal connection." *Duda v. Elder*, No. 18-cv-02890-RBJ, 2020 WL 6290383, at *8 (D. Colo. Oct. 27, 2020), *aff'd*, 7 F.4th 899 (10th Cir. 2021) (citing *Ward*, 772 F.3d at 1203); *see also Bekkem*, 915 F.3d at 1271. However, the Tenth Circuit has found that "a three-month gap between protected activity and an adverse action is too long to support an inference of causation on its own." *Bekkem*, 915 F.3d at 1271; *see*

---

[9] The District does not challenge the first or second elements of the *prima facie* case in relation to Mr. Posey's EEOC charge. Accordingly, the Court presumes that Mr. Posey has established those elements and will proceed to analyzing the third element.

*also Painter v. Midwest Health, Inc.,* 2022 WL 17332734, at *5 (10th Cir. Nov. 30, 2022); *Tiger v. Powell*, No. 21-cv-01892-PAB-SKC, 2022 WL 4182413, at *11 (D. Colo. Sept. 13, 2022) (collecting cases).  Unless the adverse action "is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999); *Bekkem*, 915 F.3d at 1271 ("where a gap of three months or longer has occurred, a plaintiff must present other evidence—more than mere speculation, conjecture, or surmise—to establish that her protected activity was a but-for cause of the adverse employment action" (internal quotations and citation omitted)).

The Court finds that Mr. Posey's complaint does not allege a causal connection between his first EEOC charge and a materially adverse action.  Mr. Posey filed his first charge of discrimination with the EEOC on March 31, 2021.  Docket No. 1 at 2, ¶ 3.  The complaint alleges that the District took the following actions against Mr. Posey: (1) informed Mr. Posey on November 4, 2021 that Manual's JROTC program would be "torn down and rebuilt;" (2) issued a counseling form to Mr. Posey in November and December 2021, asserting that Mr. Posey was not adequately performing his job duties; (3) gave Mr. Posey a letter of concern on February 4, 2022, formally expressing concerns about his job performance; (4) informed Mr. Posey on March 15, 2022 that he would be placed on a PIP; (5) informed Mr. Posey in May 2022 that the District intended to eliminate Manual's JROTC program; (6) told Mr. Posey in May 2022 that he failed the PIP and the District planned to decertify him; and (7) did not renew Mr. Posey's employment in June 2022.  *Id.* at 16-18, 20, ¶¶ 79 A-G, 82, 95.  Even assuming that all of these actions constitute materially adverse actions, Mr. Posey has failed to allege a causal connection between his March 2021 EEOC charge and the actions.  Mr. Posey

16

is not entitled to an inference of causation based on temporal proximity alone because these actions all occurred at least seven months after his EEOC charge.  *See Bekkem*, 915 F.3d at 1271; *Tiger*, 2022 WL 4182413, at *11.  Mr. Posey's complaint contains no other allegations suggesting that his March 2021 EEOC charge was a but-for cause of any materially adverse employment action.  *See Bekkem*, 915 F.3d at 1271.  Rather, the complaint repeatedly alleges that District officials retaliated against Mr. Posey for filing the First DCTA Grievance.  *See* Docket No. 1 at 16-18, ¶¶ 79-80.  As a result, Mr. Posey has failed to plead the third element of his *prima facie* case.

Accordingly, the Court grants this portion of defendant's motion and dismisses the Title VII retaliation claim with prejudice.

### C. Breach of Contract Claim

Mr. Posey's third claim, a breach of contract claim, alleges that the District violated its contractual obligations under the CBA by retaliating against Mr. Posey for filing the First DCTA Grievance.  Docket No. 1 at 20-21, ¶¶ 100-105.  The District argues that the Court should decline to exercise supplemental jurisdiction over Mr. Posey's breach of contract claim pursuant to 28 U.S.C. § 1367(c)(3) because Mr. Posey has failed to plead plausible federal claims.  Docket No. 15 at 12.

Although the Court may exercise supplemental jurisdiction over a state law claim if there is a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  The Court denies this portion of defendant's motion since the Court has not dismissed all of Mr. Posey's federal claims.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion to Dismiss [Docket No. 15] is **GRANTED in part and DENIED in part**. It is further

**ORDERED** that plaintiff's second claim is **DISMISSED with prejudice**.

DATED February 26, 2024.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge