IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-00137-PAB-MDB

ERIC POSEY,

    Plaintiff,

v.

SCHOOL DISTRICT NO. 1 IN THE COUNTY OF DENVER AND STATE OF COLORADO,

    Defendant.

---

**ORDER**

---

The matter before the Court is Defendant's Motion for Summary Judgment [Docket No. 50]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I.   BACKGROUND**

    **A.   Undisputed Facts**[1]

Defendant School District No. 1 in the County of Denver and State of Colorado (the "District") employed plaintiff Eric Posey as an instructor in its Junior Reserve Officers' Training Corps ("JROTC") program. Docket No. 50 at 1, ¶ 1. JROTC instructors are employed by the District; they are not Army employees. Docket No. 55 at 10, ¶ 1. JROTC instructors are covered by the District's collective bargaining agreement with the Denver Classroom Teachers Association. Docket No. 50 at 1, ¶ 2.

However, JROTC instructors must be retired members of the United States Army. *Id.* at 2, ¶ 3. Instructors must be certified by the United States Army

---

[1] The following facts are undisputed unless otherwise indicated.

Headquarters, Cadet Command. *Id.* If the Army decertifies the instructor or withdraws approval for the instructor, the instructor's employment with the District is immediately and automatically terminated. *Id.*, ¶ 4. Instructors failing to follow the JROTC curriculum or the requirements of Cadet Command Regulation 145-2 may be decertified by the Army.[2] *Id.*, ¶ 6. Decertification decisions are made by the Army, not the school district hosting the JROTC program. *Id.*

Army Instructors ("AI") report to Senior Army Instructors ("SAI"). *Id.*, ¶ 9. The SAI is the JROTC department chair and is responsible for the JROTC program at the school. *Id.* The District's eleven JROTC programs are overseen by a Director of Army Instruction ("DAI"). *Id.*, ¶ 7. The DAI reports to the 5th Brigade, which oversees the region. *Id.*

In 2007, Mr. Posey began working for the District as an AI at Manual High School ("MHS"). *Id.*, ¶ 8. During his time at MHS, Mr. Posey received several awards for his

---

[2] The District supports this fact with the declaration of Lieutenant Colonel Kevin Black. Docket No. 50-1 at 1, ¶ 2. Lieutenant Colonel Black states that instructors "who fail to follow the curriculum and/or the requirements of CCR 145-2 may be decertified by the Army, after which they are no longer qualified to teach JROTC." *Id.* at 2, ¶ 6. Mr. Posey denies this fact. Docket No. 55 at 2, ¶ 6. He states that "USACC Reg 145-2 effective 2012, the relevant version of 145-2 for this matter, has no such provision." *Id.* Mr. Posey fails to explain why Cadet Command Regulation 145-2 provides the exclusive criteria for determining whether an instructor should be decertified. Moreover, under the "Continuing Qualifications" section for JROTC instructors, Cadet Command Regulation 145-2 § 4-8(a)(2) requires instructors to "[d]emonstrate a thorough knowledge of JROTC subjects, effective performance as an instructor, and the ability to function well as an instructor in JROTC and within the school system." Docket No. 55-1 at 42. Mr. Posey does not explain why failing to follow Cadet Command Regulation 145-2 would not be considered part of a JROTC instructor's continuing qualifications. Because Mr. Posey fails to refute Lieutenant Colonel Black's declaration stating that instructors may be decertified for failing to follow the requirements of Cadet Command Regulation 145-2, the Court deems this fact to be undisputed.

work as an AI.  Docket No. 55 at 10, ¶ 2.  Mr. Posey received a performance evaluation rating of excellent, the highest rating, from 2007 through 2018.  *Id.*, ¶ 6.

Mr. Posey's first SAI was Lieutenant Colonel John Russel.  *Id.* at 11, ¶ 9.  Lieutenant Colonel Russel moved to another school, stating that he "wasn't going to work with the black guy."[3]  *Id.*

Lieutenant Colonel Stephen Osterholzer served as a DIA for the District.  Docket No. 50 at 2, ¶ 11.  During the 2018-2019 school year, Lieutenant Colonel Osterholzer directed that Mr. Posey be formally counseled about improperly wearing his JROTC uniform.  Docket No. 55 at 11, ¶ 10.  Other white JROTC instructors were not required to wear their uniforms and were not counseled.[4]  *Id.*

---

[3] Mr. Posey alleges that, throughout his tenure as an AI at MHS, he experienced racism.  Docket No. 55 at 11, ¶ 9.  Mr. Posey references Lieutenant Colonel Russel's move to a different school as an example of this racism.  *Id.*  Mr. Posey also asserts that it is an undisputed fact that he was called a "pimp," which Mr. Posey claims was a racially motivated comment.  *Id.*, ¶ 11.  The District denies that Mr. Posey experienced racism throughout his time at MHS and denies that Mr. Posey was called a pimp.  Docket No. 56 at 4, ¶¶ 9, 11.  First, the District argues that Mr. Posey admits that he never heard someone call him a pimp.  *Id.*, ¶ 11.  Instead, Mr. Posey relies on the fact that other instructors told Mr. Posey that they overheard someone call him a pimp.  *Id.*  The Court construes the District's argument to be that Mr. Posey does not support his assertion of fact with credible evidence because the report of the other instructors is hearsay.  The Court agrees.  Mr. Posey cites to deposition testimony where he admits that he does not have personal knowledge of the fact that he was called a pimp.  Docket No. 55-2 at 15, 149:8-150:17.  Therefore, the Court will not consider Mr. Posey's assertion that he was called a pimp.  Second, the District argues that Mr. Posey cites a single example of racism in 2007, but does not otherwise support his claim that he experienced racism at MHS.  Docket No. 56 at 4, ¶ 9.  Again, the Court agrees.  The deposition testimony that Mr. Posey relies on to support his assertion that he experienced racism throughout his time at MHS discusses only the incident with Lieutenant Colonel Russel.  Docket No. 55-2 at 3-4, 24:22-25:7.  The Court finds that Mr. Posey's assertion that he experienced racism throughout his tenure at MHS is not supported.

[4] The District denies this fact.  Docket No. 56 at 4, ¶ 10.  The District maintains that Mr. Posey was counseled for wearing miniature medals on his uniform despite Army regulations prohibiting the display of miniature medals on the type of uniform Mr.

3

During the 2019-2020 school year, Mr. Posey received a performance rating of "excellent" from SAI Lance Peterson and Assistant Principal John Tricarico. Docket No. 50 at 2-3, ¶¶ 12-13. However, Lieutenant Colonel Osterholzer "nonconcurred" with this rating. *Id.* at 3, ¶ 13. Lieutenant Colonel Osterholzer wrote on Mr. Posey's review that Mr. Posey was "not an elite performer." *Id.* Lieutenant Colonel Osterholzer wrote similar comments in the evaluations of other minority JROTC instructors, including instructors who were Black, Hispanic, and female.[5] Docket No. 55 at 11, ¶ 12.

Mr. Posey filed a grievance under the District's collective bargaining agreement over Lieutenant Colonel Osterholzer's comment on his performance evaluation. Docket No. 50 at 3, ¶ 14. Mr. Posey maintained that the DIA was not supposed to comment on his evaluation because he was not one of the individuals assigned to rate Mr. Posey's performance. *Id.* After going through the grievance process, a neutral arbitrator ruled in Mr. Posey's favor. *Id.*, ¶ 16.

At the time of the arbitrator's decision, Lieutenant Colonel Black had replaced Lieutenant Colonel Osterholzer as the District's DIA. *Id.* at 4, ¶ 22. In the fall of 2021, Lieutenant Colonel Gordon Crawford was hired as the new SAI for MHS. *Id.*, ¶ 24. Upon Lieutenant Colonel Crawford's arrival at MHS, he began to complain to Lieutenant

---

Posey wore. *Id.* The District's denial is unresponsive to Mr. Posey's assertion that his white co-workers were not required to wear uniforms and that they were not counseled about wearing uniforms. Therefore, the Court finds that it is undisputed that only Mr. Posey was counseled for alleged uniform violations.

[5] The District denies this fact. Docket No. 56 at 4, ¶ 12. The District argues that "DAIs weren't supposed to add comments, but Posey did not believe Osterholzer's comments were racially discriminatory." *Id.* The District's denial is unresponsive to Mr. Posey's assertion that Lieutenant Colonel Osterholzer wrote similar comments on other minority JROTC instructors' performance evaluations. Therefore, the Court deems this fact to be undisputed.

4

Colonel Black that the JROTC program at MHS was unlike programs Lieutenant Colonel Crawford had seen at other schools, and that MHS's program did not follow the general practices used by other programs.[6]  *Id.*, ¶ 25.

Every three years, the Army audits JROTC programs through the JROTC Program of Accreditation ("JPA") inspection.  *Id.* at 5, ¶ 31.  As part of the curriculum, instructors are required to prepare cadets for the JPA inspection.  *Id.*, ¶ 30.  The inspection includes a review of service-learning projects ("SLP"), continuous improvement plans ("CIP"), drills, and uniforms.  *Id.*

Cadet Command Regulation 145-2 requires the SAI to meet with the AI for an initial counseling to set expectations and delineate responsibilities for the year.  *Id.* at 4, ¶ 27.  As part of a supplemental counseling, Mr. Posey was tasked with directing the SLP, while Lieutenant Colonel Crawford would direct the CIP.[7]  *Id* at 5., ¶ 35.  The supplemental counseling set forth the grading policy, cadet evaluation, and Lieutenant Colonel Crawford's standardized classroom rules.[8]  *Id.*, ¶ 36.  Lieutenant Colonel

---

[6] Mr. Posey denies this fact.  Docket No. 55 at 3, ¶ 25.  He asserts that Manual's program was run like other JROTC programs and that the Manual's JROTC program received the highest JROTC Program Accreditation certification three times, including in 2022.  *Id.*  Mr. Posey's denial does not refute the fact that Lieutenant Colonel Crawford complained to Lieutenant Colonel Black about Manual's JROTC program.  Therefore, the Court deems this fact to be undisputed.

[7] Mr. Posey denies this fact.  Docket No. 55 at 4, ¶ 35.  He argues that, although he was initially responsible for the SLP, "there was another conversation where Posey was informed he was no longer totally responsible for the SLP."  *Id.*  Mr. Posey does not deny that he was tasked with directing the SLP.  Therefore, Mr. Posey's denial is insufficient to create a dispute of fact regarding whether he was responsible for the SLP, regardless of who else may have shared his responsibility.

[8] Mr. Posey admits in part and denies in part this fact.  Docket 55 at 4, ¶ 36.  He states that there "were disagreements between Posey and Crawford as to some of the items in the supplemental counseling."  *Id.*  Mr. Posey does not deny any specific portion of the District's assertion of fact.  Therefore, the Court deems this fact to be undisputed.

5

Crawford was authorized to set classroom rules by Cadet Command Regulation 145-2. *Id.* The rules prohibited eating, cell phone use, and wearing headphones in class. *Id.*

Mr. Posey did not agree with Lieutenant Colonel Crawford's cellphone policy and intended to operate under MHS's more relaxed cellphone policy.[9] *Id.* at 6, ¶¶ 37-39. After the initial counseling, Mr. Posey failed to follow the training schedule, allowed students to wear headphones or use phones in class, did not enforce uniform requirements, and did not communicate important cadet issues with Lieutenant Colonel Crawford.[10] *Id.*, ¶ 43.

On February 4, 2022, Lieutenant Colonel Crawford and Lieutenant Colonel Black met with Mr. Posey to issue him a mid-year counseling and a letter of concern. *Id.*, ¶ 40. They advised Mr. Posey to align his performance with regulations and MHS JROTC operating procedures. *Id.* At the meeting, Mr. Posey claimed that the counseling was in retaliation for the grievance Mr. Posey filed in 2021. *Id.* at 7, ¶ 47.

On February 7, 2022, Lieutenant Colonel Black and First Sergeant Paul Mahoney attended a rehearsal in preparation for the JPA inspection of the MHS JROTC program.[11] *Id.*, ¶ 50. Mr. Posey's cadets were not prepared to present on the SIP

---

[9] Mr. Posey admits in part and denies in part this fact. Docket No. 55 at 4, ¶¶ 37-39. However, Mr. Posey does not deny that he did not follow Lieutenant Colonel Crawford's cell phone policy and admits that he "had legitimate concerns about the rules Crawford was attempting to put in place, their effect on the learning of the cadets, and the fact that Crawford's policies contradicted school polices." *Id.*, ¶ 37. Therefore, the Court deems this fact to be undisputed.

[10] Mr. Posey denies that he did not follow the training schedule, enforce uniform requirements, or communicate important cadet issues with Lieutenant Colonel Crawford. Docket No. 55 at 4, ¶ 43. He does not deny that he continued to ignore Lieutenant Colonel Crawford's cellphone and headphone policies.

[11] Mr. Posey asserts that the rehearsal was limited to the presentation of the CIP, but that there was no prior mention of rehearsing the SIP presentation. Docket No. 55 at 5, ¶ 50.

6

during the rehearsal.[12]  *Id.* at 8, ¶ 52.  A second rehearsal was set for February 23, 2022.  *Id.*, ¶ 54.  On February 24, 2022, Mr. Posey's cadets briefed the SLP for Lieutenant Colonel Black.  *Id.* at 9, ¶ 64.  The cadets presented on the SLP from the prior school year.  *Id.*  Lieutenant Colonel Black found that the presentation of the SLP was unsatisfactory and demonstrated that the students were unfamiliar with the project.[13]  *Id.*, ¶¶ 65-67.

On March 1, 2022, Brigade Chief Merly Fuchs conducted a JPA inspection of the JROTC program at MHS.  *Id.*, ¶ 69.  On March 4, 2022, Brigade Chief Fuchs issued a JPA inspection memorandum.  *Id.* at 10, ¶ 72.  He gave the program the minimum score required for MHS to retain its status as an Honor Unit with Distinction.  *Id.*  Brigade Chief Fuchs was concerned with the SLP.  *Id.*, ¶ 73.  He stated that the SLP "did not seem to be Cadet-driven, did not meet the criteria for a JROTC service-learning project, and Cadets did not have sufficient familiarity to satisfactorily answer any of the basic questions asked about the project."  *Id.*  Brigade Chief Fuchs determined that MHS's program lagged significantly behind other District programs.[14]  *Id.*, ¶ 74.

---

[12] Mr. Posey denies this fact, arguing that a cadet presented on the SLP.  Docket No. 55 at 5, ¶ 52.  However, Mr. Posey does not deny that the cadets were not prepared.  Instead, Mr. Posey asserts that the cadets "who had been training all year to brief the SLP had been moved to different positions or removed from the program."  *Id.*  The Court therefore finds that it is an undisputed fact that Mr. Posey's cadets were not prepared to present on the SLP.

[13] Mr. Posey denies this fact.  Docket No. 55 at 6, ¶¶ 65-67.  Relying on his own affidavit, Mr. Posey claims that the cadets briefed the SLP well.  *Id.*  The District properly supports its assertion of fact with Lieutenant Colonel Black's declaration regarding his impression of the SLP briefing.  *See* Docket No. 50-1 at 5, ¶ 24.  Mr. Posey's affidavit regarding his own opinion of how well the cadets presented the SLP does not create a dispute of fact as to Lieutenant Colonel Black's view of the matter.

[14] The parties dispute the extent to which Lieutenant Colonel Crawford is responsible for the deficiencies of the JROTC program at MHS and whether Lieutenant Colonel Crawford complied with JROTC requirements.  Docket No. 55 at 12-13, ¶¶ 16-

7

On March 18, 2022, Lieutenant Colonel Crawford placed Mr. Posey on a performance improvement plan ("PIP") for Mr. Posey's failure to meet the Army's critical performance objectives, including Mr. Posey's lack of JPA preparedness, the substandard performance of cadets under Mr. Posey's instruction, and the failure to follow the instructions of his SAI.[15]  *Id.*, ¶ 76.  On March 21, 2022, Lieutenant Colonel Black sent a recommendation for Mr. Posey to be placed on probation to the 5th Brigade.  *Id.* at 11, ¶ 79.

On May 13, 2022, Lieutenant Colonel Crawford recommended that Mr. Posey be decertified to the 5th Brigade because Mr. Posey did not meet JROTC standards.  *Id.*, ¶ 90.  Lieutenant Colonel Black and First Sergeant Mahoney supported the recommendation.  *Id.*, ¶¶ 91-92.  Brigade Chief Fuchs concurred with the recommendation and forwarded Mr. Posey's decertification packet to the Director of Army Cadet Command for consideration.  *Id.*, ¶ 93.  The decertification recommendation was made through Army documentation and procedures, and the District was not involved in the decertification process.[16]  *Id.*, ¶ 94.

---

24; Docket No. 56 at 5, ¶¶ 17-24.  For the reason discussed below, the Court finds that it is unnecessary to resolve the parties' dispute over Lieutenant Colonel Crawford's performance as the SAI.

[15] Mr. Posey admits that he was placed on a PIP, but denies that Lieutenant Colonel Crawford had a basis to place Mr. Posey on a PIP.  Docket No. 55 at 7, ¶ 76.  For the reason discussed below, the Court finds that it is unnecessary to resolve the parties' dispute over Lieutenant Colonel Crawford's reasons for placing Mr. Posey on a PIP.

[16] Mr. Posey denies this fact, stating that "Crawford submitted a 'Recommendation for Immediate Decertification of Army Instructor Posey'" and that "Black concurred with the request."  Docket No. 55 at 8, ¶ 94.  Mr. Posey's denial is unresponsive to the District's assertion of fact.  Instead, Mr. Posey relies on argument, which is improper to include in his denials of assertions of fact.  *See* Practice Standards, (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vii.  This fact is therefore deemed to be admitted.  Moreover, Mr. Posey appears to argue that, because

On June 1, 2022, the Interim Director of Army JROTC issued an Intent to Withdraw JROTC Certification to Mr. Posey. *Id.* at 13, ¶ 95. Mr. Posey appealed the Army's intent to decertify him. *Id.*, ¶ 96. Cadet Command decided not to decertify Mr. Posey. *Id.* On August 12, 2022, the Director of Army JROTC rescinded the decertification action. *Id.*, ¶ 97.

On May 4, 2022, Lieutenant Colonel Black informed Lieutenant Colonel Crawford and Mr. Posey that MHS's JROTC program would be relocating to Northfield High School. *Id.* at 14, ¶ 102. MHS's total student population was approximately 300 students. *Id.*, ¶ 104. Northfield's enrollment at the time was over 1,200 students. *Id.* Relocating the JROTC program to Northfield would result in a 100% increase in participation in the program with minimal cost to the District.[17] *Id.* The Army informed Mr. Posey that he could apply for a position at Northfield, even though he was on a PIP, so long as he disclosed his probation status.[18] *Id.*, ¶ 108. Mr. Posey did not apply for the open instructor position at Northfield. *Id.*, ¶ 107.

---

Lieutenant Colonel Crawford and Lieutenant Colonel Black are District employees, the District was involved in the decertification process. However, Mr. Posey provides no support for the proposition that the District participates in the Army's decision to decertify JROTC instructors.

[17] Mr. Posey denies this fact. Docket No. 55 at 9, ¶ 104. He states that "MHS's JROTC program had about 70 students, which was above the 10% of student population required by JROTC standards." *Id.* Mr. Posey's denial is not responsive to the District's assertions that Northfield had a larger student population, that relocating the program would increase participation, and that the relocation would involve minimal costs. Therefore, the Court deems these facts to be undisputed.

[18] The parties dispute whether Lieutenant Colonel Black informed Mr. Posey that he could apply for other JROTC programs in the district. Docket No. 50 at 14, ¶ 106; Docket No. 55 at 9, ¶ 106.

### B. Procedural History

On January 17, 2023, Mr. Posey filed suit against the District. Docket No. 1. The complaint brings three claims for relief: a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) for racial discrimination, a violation of Title VII for retaliation, and breach of contract. *Id.* at 19-21, ¶¶ 86-105. On March 29, 2023, the District moved to dismiss Mr. Posey's complaint. Docket No. 15. On February 26, 2024, the Court granted in part and denied in part the motion to dismiss. Docket No. 39 at 18. The Court found that Mr. Posey had stated a claim for racial discrimination under Title VII. *Id.* at 13-15. The Court also found that the District had failed to show that the Court lacked jurisdiction over Mr. Posey's breach of contract claim. *Id.* at 17. However, the Court dismissed Mr. Posey's Title VII retaliation claim. *Id.* at 18. On November 19, 2024, the District moved for summary judgment on Mr. Posey's remaining claims. Docket No. 50. Mr. Posey responded, Docket No. 55, and the District replied. Docket No. 56.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is

10

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011). By contrast, where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. Of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III. ANALYSIS

The District argues that it is entitled to summary judgment on Mr. Posey's remaining claims for three reasons. Docket No. 50 at 15-20. First, the District contends that the Court lacks authority to review Mr. Posey's claims under the *Feres* doctrine, which prohibits courts from considering suits arising from activities incidental to military service. *Id.* at 15. Second, the District maintains that Mr. Posey's Title VII claim fails

because he cannot demonstrate that the District's reasons for taking adverse employment actions against Mr. Posey were a pretext for racial discrimination. *Id.* at 16. Third, the District asserts that Mr. Posey's breach of contract claim should be dismissed because Mr. Posey has produced no evidence that the District's actions were in retaliation for Mr. Posey's 2021 grievance or that its actions were because of Mr. Posey's race. *Id.* at 19. The Court will consider first whether Mr. Posey's claims are barred by the *Feres* doctrine.

The Federal Tort Claims Act ("FTCA") waives the sovereign immunity of the United States and allows suits against the federal government for injuries caused by the negligence of government employees. 28 U.S.C. § 1346(b). In *Feres v. United States*, 340 U.S. 135, 146 (1950), the Supreme Court interpreted the FTCA as not waiving sovereign immunity for actions brought by active duty military personnel. Specifically, the Supreme Court held that the federal government is not "liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service," *id.*, which has become known as the "incident to service" test. The *Feres* doctrine is based on the rationale that suits "brought by service members against the Government for service-related injuries could undermine the commitment essential to effective service and thus have the potential to disrupt military discipline in the broadest sense of the word." *Newton v. Lee*, 677 F.3d 1017, 1026 (10th Cir. 2012) (quoting *United States v. Johnson,* 481 U.S. 681, 691 (1987)). "*Feres* and its progeny indicate that suits brought by service members against the Government for injuries incurred incident to service are barred by the *Feres* doctrine because they are the 'type[s] of claims that, if generally permitted, would involve the judiciary in

12

sensitive military affairs at the expense of military discipline and effectiveness.'" *Id.* (quoting *Johnson,* 481 U.S. at 690). "Relatedly, 'separation of powers concerns that the judiciary should not delve into the internal affairs of the military' counsel in favor" of the *Feres* doctrine. *Id.* (quoting *Ricks v. Nickels*, 295 F.3d 1124, 1129 (10th Cir. 2002)). Thus, the *Feres* doctrine "prevents courts from second-guessing military decision-making and interfering in matters reserved for the political branches of government." *Id.*

In subsequent cases, federal courts have expanded the reach of the *Feres* doctrine beyond the FTCA. *Ricks*, 295 F.3d at 1127 (collecting cases). Specifically, courts have found that the *Feres* doctrine applies to Title VII claims. *Fisher v. Peters,* 249 F.3d 433, 443 (6th Cir. 2001) (applying *Feres* doctrine in Title VII action); *Brown v. United States,* 227 F.3d 295, 299 (5th Cir. 2000) (same); *Martinez v. McCarthy*, 838 F. App'x 611, 613 (2d Cir. 2020) (unpublished) (same). Courts have also found that the *Feres* doctrine is applicable to state law claims. *Davidson v. United States*, 647 F. App'x 289, 290-91 (5th Cir. 2016) (unpublished) ("The *Feres* doctrine also applies to state [law] claims because judicial review of a claim for damages asserted on the basis of state law would constitute no less an unwarranted intrusion into the military personnel structure than the entertainment of federal claims." (citation, quotation, and alterations omitted)). Moreover, "*Feres* is not limited to suits against the United States." *Bowen v. Oistead*, 125 F.3d 800, 804 (9th Cir. 1997). Instead, federal courts of appeal have found that the *Feres* doctrine is applicable in suits brought against other service members, the state, or the federal government. *Overton v. New York State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 91 (2d Cir. 2004) (collecting cases). As such, federal courts, including the Supreme Court, "has broadened *Feres,* to the point where it now

13

'encompasses, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status as a member of the military.*'" Newton, 677 F.3d at 1027 (alterations omitted) (quoting *Pringle v. United States*, 208 F.3d 1220, 1223-24 (10th Cir. 2000)); *see also Bowen*, 125 F.3d at 803-04 ("Practically any suit that implicates the military judgments and decisions runs the risk of colliding with *Feres*. . . . In sum, the *Feres* doctrine is applicable whenever a legal action would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces of the United States." (internal citations, quotations, and alterations omitted)).

"There is no bright-line rule for determining if the *Feres* doctrine applies to a given case." *Newton*, 677 F.3d at 1026. When considering the applicability of the *Feres* doctrine, courts "do not speculate or inquire how [a] particular suit would intrude upon military matters or force us to second-guess military decisions." *Id.* Instead, courts "ask whether [the plaintiff's] suit arises from injuries incident to his military service." *Id.* at 1026-27. The "incident to service" test has been interpreted to encompass "even those injuries 'that are attenuated from the servicemember's duty status.'" *Id.* at 1027 (quoting *Ricks*, 295 F.3d at 1128).

The District argues that Mr. Posey's claims should be dismissed because they arise out of activities incident to Mr. Posey's service in the Army. Docket No. 50 at 15-16. The District maintains that Mr. Posey's claims are based on the negative counselings he received from Lieutenant Colonel Black and Lieutenant Colonel Crawford, as well as their attempt to decertify Mr. Posey. *Id.* It asserts that these actions are incident to Mr. Posey's military service because they are based on his

14

supervision in the JROTC program.  *Id.*  Specifically, the District claims that the *Feres* doctrine applies because Mr. Posey challenges disciplinary actions taken against him for failing to comply with Army regulations that were subject to review through Cadet Command.  *Id.*

Mr. Posey argues, without citation, that the "*Feres* doctrine only applies to federal claims against the federal government."  Docket No. 55 at 14.  Mr. Posey asserts that, because his claims are brought against a school district and not against a federal agency, the *Feres* doctrine does not apply.  *Id.*  Mr. Posey is incorrect.  "*Feres* is not limited to suits against the United States."  *Bowen*, 125 F.3d at 804.  Furthermore, courts have applied the *Feres* doctrine to claims brought under Title VII and to state law claims.  *Fisher,* 249 F.3d at 443 (Title VII action); *Davidson*, 647 F. App'x at 290-91 (state law claims).

Moreover, federal courts that have considered suits by JROTC instructors have found that their employment related claims are incident to their service in the armed forces.  In *Norris v. Lehman*, 845 F.2d 283, 285 (11th Cir. 1988), the court considered whether a Navy Junior Reserve Officers' Training Corps instructor could bring discrimination and due process claims against the Secretary of the Navy and the Escambia County School Board of Education based on his decertification.  The court determined that the instructor's claims were barred by the *Feres* doctrine because it was "undisputed that the Navy retained the authority to administer the NJROTC program and to supervise Norris."  *Id.* at 287.  "Furthermore, both the NJROTC units and its instructors must comply with a myriad of prescribed military instructions, and only

15

the Navy had the authority (1) to establish, disestablish or place on probation, NJROTC units and (2) to withdraw certification as an NJROTC instructor." *Id.* (footnotes omitted).

In *Glenn v. Rumsfeld*, 2006 WL 515626, at *8 (N.D. Cal. Feb. 28, 2006), the court found that a Marine Corps Junior Reserve Officers' Training Corps instructor's due process claim was barred by the *Feres* doctrine. The court found that

> Glenn's employment as a MCJROTC instructor falls under a comprehensive regulatory scheme, including 10 U.S.C. § 2031 and MCJROTC SOP, § 3002. In addition, Glenn's employment relationship, despite Glenn's status as a civilian like the instructor in *Norris*, is essentially a military one. Because Glenn's due process claim would require this Court to examine a military personnel or disciplinary decision, the intramilitary immunity doctrine precludes judicial review.

*Id.* (internal citations and quotations omitted). In *Fileccia v. Caddo Par. Sch. Bd.*, 2017 WL 2350451, at *4 (W.D. La. May 30, 2017), the court reached the same conclusion regarding a JROTC instructor's claims for discrimination, invasion of privacy, and violations of his due process rights against the Caddo Parish School Board. The court stated

> The activity Plaintiff performed, JROTC instructor, was inextricably intertwined with the military hierarchy. All JROTC instructors must, as a matter of law, be active or retired military. 10 U.S.C. § 2031. Retired military instructors must meet requirements and qualifications set out by the Secretary of the Army, and must be certified by Cadet Command. In this case, just as in *Norris*, it is undisputed that the Army retained the authority to supervise the JROTC program and to determine who was qualified to participate as an instructor.

*Id.*

Mr. Posey's claims are also barred by the *Feres* doctrine. As a JROTC instructor, Mr. Posey's certification, as well as the decertification process, is within the exclusive control of the Army. Docket No. 50 at 2, ¶ 5. All the adverse employment actions that Mr. Posey attributes to the District were taken by his superiors in the JROTC program and were part of the Army's supervision of the program. Lieutenant

16

Colonel Osterholzer's decision to counsel Mr. Posey was based on violations of Army uniform regulations, Docket No. 55 at 11, ¶ 10, and his comments on Mr. Posey's performance evaluation were made pursuant to his role as the Director of Army Instruction.  Docket No. 50 at 2, ¶ 11.  Lieutenant Colonel Crawford's and Lieutenant Colonel Black's decision to counsel Mr. Posey, to place him on a PIP, and to seek his decertification were based on Mr. Posey's perceived insubordination, his failure to comply with Cadet Command Regulation 145-2, and his failure to prepare for the Army's JPA inspection.  *Id.* at 4-13, ¶¶ 25-97.

Allowing Mr. Posey's claims to proceed would require the Court to "delve into the internal affairs of the military" and to "second-guess[ ] military decision-making." *Newton*, 677 F.3d at 1026.  The *Feres* doctrine prohibits the Court from making these kinds of determinations.  *Id.*  In addition, Mr. Posey provides no undisputed facts regarding any actions taken by the District or by a District employee that are not related to the JROTC program.  *See* Docket No. 55 at 10-13, ¶¶ 1-34.  As such, Mr. Posey provides no other basis for his claims against the District.  Therefore, the Court finds that of Mr. Posey's claims are barred by the *Feres* doctrine.

Because the *Feres* doctrine prohibits the Court from reaching the merits of Mr. Posey's claims, the Court will not consider the District's other arguments.  *See Fileccia*, 2017 WL 2350451, at *5 (claims barred by the *Feres* doctrine are "nonjusticiable"). Accordingly, the Court will grant the District's motion for summary judgment.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 50] is **GRANTED**.  It is further

**ORDERED** that plaintiff's claims are **DISMISSED with prejudice**.[19]  It is further

**ORDERED** that this case is closed.

DATED September 15, 2025.

BY THE COURT:

*signature*

PHILIP A. BRIMMER
Chief United States District Judge

---

[19] *See Fileccia*, 2017 WL 2350451, at *5 (dismissing claims with prejudice); *Glenn*, 2006 WL 515626, at *8 (same).